We'll call the next two cases United States of America v. Baldwin-Centeno and United States of America v. Santos-Centeno, also known as Hector Cruz, Mr. Schweitzer. And Ms. Kelly also has two minutes on behalf of Santos-Centeno, is that correct? That is correct, Your Honor, to the extent the court has any questions. What was that? To the extent the court has any questions, otherwise I would respectfully request that Ms. Kelly be added to this hearing. Okay, thank you. All right, Mr. Schweitzer. Good morning, Your Honors. Brett Schweitzer of the Federal Defender's Office here representing Baldwin-Centeno. I've been allotted 13 minutes in the first instance. I would request that two of those be reserved for rebuttal. How many? Two. Okay. Thank you. That request will be granted. In this case, I think it makes sense to start with what I believe the floor is, and that is that at a minimum I believe this case must be remanded for a new trial based on the constructive amendment that's at issue here. There's no doubt that the jury was told it could convict for aiding and abetting based solely on Baldwin driving the car away from the scene of the assault, and there's no doubt that that's legally incorrect. All right. Is it possible to interpret those words of the prosecutor as referring to the robbery charge that was also in play at that point? No. Because the context of those remarks, the prosecutor begins with a statement that he doesn't need to have hit the victim. He doesn't need to have done anything. It's all related to the assault, first of all. So we look at the context, and that's, again, at page 920 of the appendix. But then when the objection comes, and there's no doubt this issue was preserved, the government acknowledges it. It's sent to the language, it says, if he was the getaway driver driving his car away from a crime scene, have the victim fell to the ground, you know he's driving the car that alone, he's guilty of any one of these. Is that what you're referring to? Yes. So at 920 there are two comments. First, the preface, again, this is in the context of the assault and aiding and abetting liability. The preface is, any one of these points I'm about to go over, any one of them, you can find him guilty. Then it's what Your Honor quoted there a few lines lower in the summation argument where he says, and the key, I think, is driving the car, knowingly driving the car, that alone, he's guilty. So there's no question. But in front of the jury were the assault charges and the robbery charge. No. Well, first of all, constructive amendment can be made either through a jury instruction or through summation argument. I understand that. Okay. So you're saying that, you know, but pending, the charges before the jury were assault and robbery. Those were the charges that were properly before the jury. Correct. Correct. And so what the prosecutor did was because she made the legal mistake and she thought that evidence of flight from the scene was sufficient for aiding and abetting, the prosecutor told the jury that that was sufficient to convict for aiding and abetting. And what that did was that was assault. But isn't that sufficient to convict for robbery? It would be for robbery, but that's not what she told the jury. But that's robbery in front of the jury. But Your Honor, she doesn't specify and say, she doesn't distinguish her statement. Now, that could be the fact that she doesn't distinguish it may constitute error, but. . . Well, I think there's two points in response, if I may. First of all, I think a fair reading of her comments are that she's talking about assault, but more importantly, frankly, is when the objection is made, and this is the point I tried to make before, when the objection is made, there's a specific request from defense counsel for a curative instruction that this is not sufficient for assault. And the government says, oh, no, it is sufficient for assault. So there's no questioning what happened here. And what happened was there was a mistake made about the law. And so when defense counsel and the prosecutor misunderstood the law, the district judge misunderstood the law. When it came time for the post-trial motions, they were denied. The Rule 29 was denied. One of the reasons it was denied was because the slight evidence was sufficient alone to support making an abetting conviction. So there's no real question that that's what the prosecutor was talking about. But more importantly, when the objection was made, everything is perfectly clear, because at that point the government resists a targeted instruction saying, no, that's not enough for assault. Now, there was no suggested jury instruction submitted by the judge. There certainly was no defense. Not on that point. Yes, there was. Where is it in the record? That is record 923. What defense counsel said was, you need to tell the jury that that's not sufficient unless, you know, unless there's evidence that he used the car to run into and commit the assault, like by running over the person. So when you say there was a jury instruction submitted, what you're talking about is that contemporaneous objection when the defense counsel was saying, please fix this, not something submitted to the court later to say, with your final instruction, say X instead of Y. Is that what you're getting at? No, not quite. So this is important. This is in the record. So the objection initially comes in at 920. And then what the court says is, well, I think that's, you know, I'm not going to change anything. If you want to submit an instruction, I'll consider that. Then at 923, there's an oral instruction proffered, an oral jury instruction proffered that would cure this. I think we're saying the same thing. There was not, at the conclusion of the trial, there wasn't the submission to the court. It was in the course of this exchange or discussion that defense counsel said, say it like this. I think that's probably right. There was no written, if the question is was there a written, but this was at the end of the trial. And there also was no, after the judge grant, gave the judges, because the judge's response at 923 is basically, I think with the Third Circuit model charges, it'll be sufficient, we'll capture it. It then proceeds to give an instruction. It gives the pattern aiding and abetting instruction. And then there's no further request by defense counsel after the court is saying, hey, you forgot my suggestion. It was rejected. You understood at 923 the court rejected the language offered and said, I'm going to give what I'm going to give. Yes. Right, so there's no obligation to then say, hey, again, give this instruction because it's wrong. Why do you think at 924 the court says, I think my instruction will cover it, but if you want a specific curative instruction, I'll be happy to do that if you propose language. That comes after the language you're pointing to. It's on 924. Does something happen in the record after that where defense counsel says, wait a second, you didn't cover what I wanted to, you said you thought it would cover it, but it doesn't cover it? Yes, I'm sorry. I'll also point the court to 929. There, where defense counsel says, this is on 929. I just figured the jury should know that unless there's evidence that the car was used in the assault, like he drove it into the victim or something like that, there's getting into the car, there's leaving the scene. They should not misunderstand that. That's sufficient to show aiding and abetting. This is all in the context of what instruction, curative instruction to give. So I'm sorry, this was also, I should have included those page numbers as well, 929 to 30. That comes after the comment at 924 where the judge says, I think my pattern instruction covers it. Now, in addition to, I would submit to the court there's no question that that's what was going on here. The mistake was made. It's legally erroneous. There's no argument on appeal that it was legally accurate. So the question then becomes. Let me ask you this question, Mr. Schweitzer. What case can you point to that says that language such as this that the prosecutor made that you cite at 920 is enough to constitute constructive amendment? In other words, the prosecutor's comments as opposed to jury instruction? The prosecutor's comments that. The court's instruction? This is not, if we accept what was said here, I don't see this as a blatant misstatement of the law. You could argue that this borders on a misstatement of the law. But it is such a small segment of the closing argument. My question is, what case has ever said that a comment similar to this was enough to constitute constructive? Well, I can point the court to McKee where they talk about summation argument being qualifying as constructively amending. But they just merely say that in McKee. That's true, Your Honor, but I would really focus the court on not the number of words but the context here. This is what happened in summation. The defense put on a vigorous argument that there was not sufficient evidence here, which I'd like to talk about today too because I believe there is not sufficient evidence, and laid this all out. By any stretch of the imagination, this was not an overwhelming case. This is at the very least a very close case. This was a hotly contested, no sufficient evidence. The prosecutor comes back in rebuttal and says, here's a road map. Here are three different ways you can convict. Maybe he hid them. Maybe he encouraged others to do it. Maybe he just drove that getaway car. That is the only fact in this record of an affirmative act taken by Baldwin Sentinel. So to suggest somehow that that was a tossed-off comment, that was a few words, that's something that wouldn't have drawn the jury's attention, this was the highway to conviction. It's the only evidence in the case. So I would suggest to Your Honor that it's critical. It's absolutely critical, and it was fully disputed. Is it significant that, as I understand the evidence, the proof about Baldwin Sentinel being the driver comes in for the June 16th event? The June 20th event, I don't know, and if there is evidence I'd like you to tell me, whether he's identified as the driver for June 20th. No, there isn't. The evidence is contrary. Of course, he was acquitted on the June 20th. That's my point, though. Can we take anything from the fact that on June 16th the evidence is he was the driver, he gets convicted? On June 20th, there's evidence to suggest he was present, but nothing to point to him as the driver. If he gets acquitted, should we take anything from that jury verdict in understanding the significance the jury would have placed on the point you just made? I think the conviction here, I mean, a lot of times we look at a jury verdict and say, well, who knows, you know, what happened? What did the jury really think? What was the basis? Here it's patently clear. It's the only evidence. It's the getaway car evidence. That's what the conviction was. Is it really patently clear? I mean, you may be right. In fact, I think you're right. It's hardly an overwhelming case, but Mr. Robles, if I'm remembering his name right, says that, and I don't mean any disrespect to your client by first naming him, but to keep him separate. I've done that in the book as well. Baldwin is there. He's at the scene. He appears to be in the group that's surrounding the fellow as he's beaten nearly to death, and the fact that he's there, and you can say surround or around, but he's present. I mean, you could certainly, a jury, a rational jury could certainly read Mr. Robles' testimony and conclude that Baldwin was not simply a bystander. Would you concede that? If we look at this as we have to with an eye most favorable to the government and the jury's verdict, the things Robles said could be interpreted as making him an aider and a better setting aside the driving the car thing. Do you acknowledge that? I don't, Your Honor. It's just a sufficiency. So I think it counts. If the jury looked at Robles and said, this guy's shifty. He's sort of, you know, we're not really sure. He was treated as a hostile witness, everything else. What that leaves is, and what Robles says is around, he's not totally exculpatory of either defendant, but more importantly, if the jury looks at him and says, we can't really take what he says at face value, that leaves a void. Well, no. But they must have because they returned a verdict. Right. Well, they returned a verdict, I would suggest, on the getaway car. But they returned it also against Santos. So it's hard to sit here and say that they had nothing to rely upon. Well, I think the mix is different with fixing the standard of review, Mr. Schweitzer. I mean, you're saying the jury looks at him and thinks he's shifty and X, Y, Z. You know, there's plenty of case law that says a jury is entitled to believe a witness for some things and not for other things. Sure. By that standard of review, and if it's enough to convict Santos who didn't drive the car, it's certainly conceivable that a rational jury could look at that and say, well, you know what? We think he wasn't just the boss. Well, to be perfectly clear, there's insufficient evidence as to both Santos and Baldwin here. And so getting to Robles, I mean, what he provides is around, near, maybe he was just looking. Maybe he hit. I don't know. So one inference, perhaps, is, okay, he's being shifty. Maybe he's unreliable. But another inference that is fully supported in this record is that he's dead drunk. So we have to draw the inferences in support of the jury. That's true. You're not saying there's equal inferences and so, therefore, there's insufficient evidence. That's absolutely true. But what this Court does need to do is it needs to say, does this pass the rationality test to be non-speculative? And hanging conviction on the fact that the one witness who essentially provides neutral testimony is incredible. Hanging conviction beyond a reasonable doubt on that, that's extraordinary.  Thank you, Your Honor. Mr. Schweitzer, we'll have you back on rebuttal. Ms. Kelly, do you have anything that you want to add about Santos at this stage? No, Your Honor. Your Honor, I would like to respectfully rebuttal. Ms. Wolfe. Good morning. May it please the Court. I am Denise Wolfe on behalf of the government, and I was the prosecutor during the trial. And I respectfully submit that there was no legal mistake in telling the jury that it's enough to be the getaway vehicle. For assault? For direct assault and for aiding and abetting. Would you have a case or explanation of how assault is not completed once the gentleman was on the floor? There is no authority, as defense proposes, that says that assault is over and escape is a separate crime. How about the D.C. case in Salamanca? Why don't you go and take on Judge Santel directly? In Salamanca, Your Honor, in that case, the defendants were 30 feet away from when the assault happened. The girlfriend in Salamanca... I get the facts. Yes. It's different. Well, it's not different in what the court said. I want you to address the legal statements that are made by the court in Salamanca, where Judge Santel says, you know, when the assault is done, it's done. And driving away isn't part of an assault. He's pretty plain about it, isn't he? Yes, Your Honor. But that's because in that case, the defendant wasn't part of the assault. Here, the defendant was in proximity during the assault, not 30 feet away. He was part of the assault. What does that have to do with this? Don't go to direct involvement because we're not talking about he's a principal. We're talking about aiding and abetting.  Aiding and abetting. Salamanca says, plain as day, a person cannot be found guilty of aiding and abetting a crime that has already been committed, and then says the assault was over when the driving started. That can't be aiding and abetting. How is that distinguishable from what happened here? They beat the victim to a pulp. That's done getting a car and driving away. How is that different from Salamanca? That's different because the assault was not over. It is part of the entire offense, what happened in those few moments in time, Your Honor. And what's important here is the requisite knowledge of the defendant. How is it ongoing? We're not communicating. I need you to do something to show me that Judge Santel is wrong as a matter of federal law when he says assault is over when you stop beating on the person. And then the getaway stuff, it's not a continuing crime. It's not like robbery where the getaway is part of the crime. It just isn't. But it is. So Judge Santel is wrong. I would say he would get it wrong. And your authority for that is? Aiding and abetting under Third Circuit law. Do you have any case at all to rebut what Judge Santel said in Salamanca and what's implicit in Judge LaPelle's opinion for the First Circuit in Fugro, I apologize, Fugro, Cartagena? It's the aiding and abetting standard, Your Honor. It's as simple as that. And you can't cut up an offense. It's the same escape is the same as lookout. What's the difference? It's all part of one offense, whether an individual is scoping the scene, acting as a lookout, waiting for, making sure cops don't come, then there's an assault, and then somebody is part of that group in that offense and leaves. It's all aiding and abetting the same offense, just different points in time. There's no authority to divide it up. Yeah, there is. When you say there's no authority, I just cited you as a Third Circuit court witness. There's no authority in the Third Circuit that it's not a continuing offense. It's like robbery where escape is an integral part of the offense. And here... Well, wait a second. Robbery is part of the offense because the cases uniformly talk about it in terms of the carrying away is part of the offense. There are multiple decisions on that point. There's no carrying away with assault. That's why it's not considered, by these cases at least, to be a continuing crime. So what are you relying on other than saying you don't see the distinction? Do you have any legal authority for the idea that an assault is not a completed crime, as opposed to a robbery, which the case is defined as a continuing crime? With the Jourdain case and the Thomas case in Eighth Circuit, they talk about after the assault, the war group, the fleeing together, is part of the aiding and abetting. And it goes to aiding and abetting standard, Your Honor. But as to Baldwin, though, Baldwin's role in this, which you could say, you could say that Santos' role got enhanced by the fact that he was clearly identified as an aggressor on June 20th. Baldwin, there wasn't much evidence about what Baldwin did on June 20th. In fact, he was acquitted. But what was important about Baldwin here on June 16th was he drove the getaway car. Yes, Your Honor. Okay. And as to Baldwin, isn't that a little different than just what you're categorizing as escaping from the fight? Yes, it is, Your Honor. There's two ways that the getaway vehicle is crucial. And part of the jury's rational decision to convince. I mean, usually you see somebody charged in a robbery with accessory after the fact for driving a getaway vehicle. That could have been charged here, but it didn't have to be. All right. So you could be both an aider and abetter and an accessory after the fact. And here also a principal as well. We're not conceding they weren't principals. We think there's direct evidence that they were principals as well as aiders and abetters. But you argued, it sounds like you're arguing to us, and I'm inferring from that that the language that was quoted to us by Mr. Schweitzer from your summation at the trial indicates that you were in fact arguing to the jury it is enough for aiding and abetting liability for this man to have driven the car. That that is a way for you to convict here. That is correct. Okay, good. That is absolutely correct, Your Honor. Good, gotcha. But that is not, that is a correct way, aiding and abetting, so long as there was requisite knowledge on the defendant. And that was what you were, it's not that you were really meaning to assault the robbery. You were referring to the assault, right? I was referring to the assault, but we were referring to the entire case as it relates to the robbery and the assault. Okay, Ms. Wolf, put yourself back in that trial a second. Suppose there was no robbery charge, suppose there was no wallet, no cell phone taken, would you have said the same thing? Yes, Your Honor. It is, and there's two reasons here why they can consider the getaway vehicle. Two reasons. One goes to aiding and abetting, and one goes to direct assaulters. And if I may, starting with the latter, it shows consciousness of guilt. That it's valid evidence for the jury to infer they participated, both Baldwin and Santos, in the underlying crime. Well, if that's all you had argued, I don't think your colleague could stand up and say a constructive amendment. If all you had said is, and you can infer their state of mind by their behavior throughout the course of events, here I think the objection is it suggested a particular act was sufficient to constitute evidence of the crime. Well, that's for aiding and abetting. But now I'm on the direct evidence that it can, it's consciousness of guilt, but we have lots of other facts. I disagree with defense counsel saying that the getaway car was the only fact supporting the conviction. That's not accurate at all. So Barbara 1, the Third Circuit case in 1970, says flight from the scene of a crime with the actual perpetrators has been said to justify an inference that the defendant associated with the criminal undertaking. That's it right there for consciousness of guilt for both Baldwin and Santos. Here the facts show. And you're arguing on this point, this is your argument about direct as a principle liability. Correct. And I'll get to the aiders later. Sure. Assume for the purpose of discussion, Ms. Wolf, that we were to disagree with you about whether or not aiding and abetting can cover flight in an assault context. Even if it's correct that the flight could be consciousness of guilt and therefore evidence the jury could consider for guilt as a principle, would you concede that the fact that you argued in the alternative for a conviction on aiding and abetting means that we'd be in a position where we'd have to send it back for retrial anyway because we don't know whether the jury convicted on a proper basis because they viewed him as a principle given the inferences you've described, or whether they convicted him on an improper basis as an aider and abetter when in fact what you proved up in that regard was accessory after the fact. I don't think so, Your Honor. How would we get away with not doing that? The standard on appeal, is there any reasonable inference that the jury could have convicted the defendants? So it's either. So if you wanted to, because we don't know, you can take either. So their inference, a reasonable inference the jury made, was hearing all the evidence that the defendants engaged the victim, that they were around the victim, that they were part of the group that harmed the victim, that the victim was injured, and then that they fled, and that they didn't call 911. All of that shows a reasonable inference on either grounds. Even accepting that, what your argument is, if there is, and for purpose of my question you have to accept this, a manifestly erroneous pathway laid out for the jury to convict, if there is still a way they could have properly convicted, that verdict is not infirm, despite the error. That's our belief. That's correct, Your Honor. Now you also had said that the court's jury instructions obviated any concern about a constructive amendment. Can you talk a little bit about that? Yes, Your Honor. I think the court's jury instructions are really key here. The judge properly instructed the jury with respect to eating and abetting. There was no objection at the time. And the judge said this. Which page are you? One moment, Your Honor. I'm sorry. Go ahead. I'll find it. You continue, Your Honor. Right. In June of the course of this, the police pick up on when you say there was no objection at that point. You heard the calls as we were going back and forth, Mr. Schweitzer, pointing to several places where defense counsel was saying, no, no, you've got to say something to fix this problem, the problem that we've been talking about. Right. Again, we don't think it was a problem. And this instruction was in accord with Third Circuit law, and it was on eating and abetting. And it was a mere presence instruction. And the court said, we're going to convict on eating and abetting. Defendant must know. Defendant knew that the offense charge was going to be committed or was being committed. Two, defendant knowingly did some act for purpose of eating, assisting, soliciting, facilitating, or encouraging the principal in committing the offense. Sure. Yeah, I'm with you, Ms. Wolf. We read that too. What I'm trying to get at is your argument in your brief was, or it seemed to be, and I'm starting to doubt that I understood it, so I'm asking for your help. It seemed to be that even if there was a problem with what you said in the summation, what the court said in the jury instruction cured whatever problem there was. Yes. So, of course, for that argument to make sense, you've got to kind of accept that there was a problem in your summation. Assuming for the sake of argument there was a problem in your summation, how did what the court said at all steer the jury away from the idea that Baldwin could be guilty for aiding and abetting based solely on driving the car away? Because that was the objection made. That's what the defense counsel wanted fixed. What in the district court's jury instructions would have cured that problem, assuming it's a problem? That the defendant had to have the requisite knowledge, the requisite state of mind to knowingly drive the car away to support the offense, and that it wasn't mere presence. How does that meet the argument that there's a constructive amendment because the driving away becomes accessory after the fact, not aiding and abetting? How does that assertion about knowledge fix that problem? Because the jury at this point has to determine what the defendant's state of mind was. What was the reason why he drove away? What was the reason why he was there? Was it an innocent bystander, or was it more? Going into the defendant's state of mind. And the jury can infer several things, one of which... I'm just... My apologies, but I'm not... Certainly state of mind is a relevant point, but not if aiding and abetting couldn't possibly be a basis for conviction for driving away. If one accepts the premise that the assault ends when the punching stops, which is the foundational assumption we have to make for this argument to make any sense, then something the court said in those instructions needed to It could be enough, didn't it? Isn't that the only way the court's instructions could obviate the problem? Yes, Your Honor, possibly, but the court always instructs, counsel's arguments are not evidence, and I give you the law. And we presume that the jury follows the standard instructions on aiding and abetting and mere presence that was given. That's my answer, Your Honor. And here we don't only have the getaway vehicle. We have much more than that. We have testimony that the defendants were around the victim. And I want to quote because it's important. So you will agree that these five males were around him. Answer, yes. And another time, they were around the dude. Answer, yes. And the witness says, no one else was there. So we have five males around the dude, around the victim. Around means closing in and circling. From the perspective of the victim, the jury can infer, they blocked my escape. They intimidated me. All five. And we have more than that. We have more than that. We have the witness saying that these defendants were in a group of five that attacked the dude. And we have the witness saying these defendants were part of the group that hurt this man. That is strong evidence. The jury can infer two things from it. They can infer the government's version, which is that the victim was blocked, intimidated, and that the defendants took the same action as the group, that they were part of the group. Or the jury inferred the defense argument, that they were simply bystanders, innocent bystanders. There's many inferences you can make, but it doesn't matter on appeal. The only inference that's rational is what the jury did. They convicted him. Was it your theory of the case that they went there to beat somebody up and rob them? That's my theory. But more importantly, the jury could have inferred that, Your Honor. Did you argue that as a theory? It may have come up during the cross of the court. Yes, Your Honor, we did. Because the June 20th, which was three days later, four days later, almost the same type of plan, same location, same style of attack. There was testimony that the men were acting suspiciously. They broke up. Some went into the park. Some went over here. And then they stared at the victims, and then they attacked. So a reasonable juror could infer that these individuals had some premeditation, had planned it. There's too much similarity for this to be a coincidence. They had the same vehicles, same individuals there. So, yes, Your Honor, that's one of the things the jury could have inferred. I also want to point out a quote from the… Ms. Wolfe, your time. Your Honor, may I say one last thing? Yes, you can. Christopher Robles, as the record showed, was a simple man and of limited ability to articulate. But the jury saw him. They saw how he sat on the jury stand, how he approached it, how he had long pauses. And they were able to assess him in the context of what happened. He, in many ways, spoke another language. But he was clear, he was consistent, and he didn't embellish. He said what he saw and what he didn't see. You treated him as a hostile witness. Yes, Your Honor. So you must have thought he was all that clear or consistent. Your Honor, he was clear. I mean, you were given permission to lead him because you felt he was not being consistent with his grand jury testimony, right? Your Honor, he was clear on what he saw. He said it over and over again. And he was clear what he didn't see. Okay. Thank you. Thank you, Ms. Wolf. Mr. Schweitzer. Thank you, Your Honors. I'm not sure what we're doing here with respect to the constructive amendment. The government conceded in footnote 7 of their brief that there is prejudice if there's a constructive amendment. There's not any analysis of another way to uphold the verdict or anything like that. Why don't you respond to the assertion that we've heard from Ms. Wolf at the podium right here that it doesn't matter, even if it was erroneous, there was a proper way to convict and that makes the verdict okay. Well, that's a contradiction of their brief. That's a contradiction of Dario, which says it's per se reversible. It's not the law. There's nothing really more I can say about it than that. It's just not the law. Now, with respect to the issue of whether assault is a continuing offense, it is Salamanca for sure. It's not just Salamanca. Barlow distinguishes it in dictum but recognizes the distinction. The Barlow case cited in our brief, the Lefebvre Treatise, again, recognizes the distinction. So there's ample authority for that as well. Of course, the government doesn't have any authority to the contrary. So with respect to the jury instructions, did the jury instructions cure? I didn't get much of a chance to talk about that in my opening argument, so I'd like to touch on it now. And in addition to the fact that a genuinely curated instruction was denied, which I think is obviously important here in this record, it's quite clear when you look at the pattern instruction that it doesn't address it. And that's because what the pattern instruction says is some act for the purpose of aiding is required. And the pattern instruction also says the defendant in some way participated in the offense to make it succeed. Now, the prosecutor, the judge, everybody but defense counsel, went along with the idea that one of those acts that would be sufficient under the instruction is driving the getaway car. To suggest somehow that the jury came to a different conclusion, didn't realize what the law actually was, is just really, frankly, inconceivable. So the jury, the pattern jury instruction here does not cure the error. So again, my position would be this is a fairly easy case on remanding it for a new trial. But on sufficiency, your honors, I would submit that the court should not strain. Let me go back and read you line 18 to 21, line 920. This is essentially your objectionable comment by Ms. Wolf. If he was the getaway driver driving his car away from a crime scene after the victim fell to the ground and he knowingly is driving the car, that alone, he's guilty, any one of these. Now, there was not much focus on that word knowingly driving the car until Ms. Wolf's argument that driving the car, that there could be an inference in driving the car of guilt from participation in the assault. So I'm not going to argue that. So you disagree with that? No. So then what's wrong with the comment? Let me finish my answer. So the point is that it's not that the getaway car evidence is somehow irrelevant to anything. It logically would go to principal liability. It's not enough. My position would be this is certainly not sufficient in combining. I guess I'm having trouble seeing what this goes back to my original question. What's the amendment? Okay, so the amendment is, so in other words, if this goes to principal liability and say for sake of argument that there's sufficient evidence of principal liability, if there's also, if the jury was told that you can convict for aiding and abetting, that's what 920 says. Okay, so it's not, they don't, the prosecutor is not talking about principal liability. There's no question because they were trying to convict him as an aider and abetter. Right. Okay. So if that theory. That's not your complaint. No, no, no, it is. It is? So if that erroneous amendment. I thought your complaint was that they amended the indictment to convict him of being an accessory after the fact. I think it's the same. No, it's not the same thing. Well, let me explain. I think maybe I'm confused. Your Honor, I apologize. So what the error was, was presenting to the jury a legal theory. They didn't call it accessory after the fact, right? And there's no label put on it. But what was presented to the jury was a legal theory that, in fact, is accessory after the fact. It was not in the indictment. But Ms. Wolf says it could also be aiding and abetting. No, it can't be aiding and abetting. She says it could be principal. Well, she says it could be aiding and abetting, but that, all the law stands against that. But what she, I believe what she's saying, what we started to talk about, was she's saying maybe it's principal liability as well. Well, she said it was both, but. Well, she did say it was both. I don't have a. Your argument is. Whether it's principal liability or not. It doesn't matter. It's per se reversible. Because the assertion that it's aiding and abetting was put before the jury, and that is legally erroneous. That's your position. That's legally erroneous. It's per se reversible. It doesn't matter if there's another theory out there. And here, the prejudice is patent. We don't have to show prejudice, but it's patent. Mr. Schweitzer, 18 U.S.C., Section 2, Principles. It says whoever commits an offense against the United States or aids and abets, counsels, commands, induces, or procures its commission is punishable as a principal. Aids and abets. That's right, Your Honor. So then he was charged with aiding and abetting. The problem was the jury was told that driving the getaway car qualifies as aiding and abetting, when in fact it doesn't, and what it in fact qualifies him for is accessory liability, which was not charged. Well, I think we're... Maybe we're talking after each other. I'm sorry. What I disagree is whether or not my question to you both now and your original argument was whether or not that commentary at page 920 constituted a change of what he was charged with. You're saying it did. I was questioning whether or not those three lines, particularly with knowingly he's driving the car, doesn't really reference back to what Ms. Wolff argued was an inference that from driving the car away, he was involved in the assault. So I think what Judge Fisher might be asking is could we also infer from her comment that it's proof of knowledge, state of mind, not necessarily conduct that would necessarily support aiding and abetting. Just like it is proof of state of mind if you're a principal, why is it equally proof of state of mind if you're an aider or abetter? Is that what you're trying to... Well, I mean, sure, but there's... I think you're saying it's the same way. Okay. That may very well be, but there's an actus reus requirement for aiding and abetting liability, and that's an affirmative action. And so knowledge... I don't... I apologize. I don't really see how the knowledge, the knowing... There's a dispute that presumably he knew he was driving the car. So I don't really see how the knowledge aspect plays in here. The fact is there's an actus reus component of... Well, maybe how it plays in is I think what they're arguing is, hey, let's get out of here. Maybe it plays in one particular way, which Ms. Wolfe got to at the end of her argument, which is it indicates or implies perhaps that there was premeditation. In other words, that the fact that he drove away in this instance and that there's evidence he might have been the getaway driver in the second incident indicates that is proof to show he was an aider and abetter earlier. It's an act that comes after the event that concludes, but it's proof that goes to his state of mind and his participation at the earlier time. Do you have a response to that? I think my response to that would be that... A polite so what because she still argued that aiding and abetting can be satisfied by the driving away. It's sufficiency. It's not a constructive amendment. I don't think it really counts for anything in sufficiency. I think we understand your position. You may not understand my question, but we'll take it all under...